Estate of Emile Pfizer, Deceased, The National City Bank of New York and Albert A. Teeter, Executors v. Commissioner.
Estate of Pfizer v. Commissioner
Docket No. 111997.
United States Tax Court
1943 Tax Ct. Memo LEXIS 81; 2 T.C.M. (CCH) 916; T.C.M. (RIA) 43457; October 18, 1943
*81 George J. Regan, Esq., 46 Cedar St., New York, N. Y., and Harry W. Stelle, Esq., for the petitioners. William F. Evans, Esq., for the respondent. STERNHAGEN The Commissioner determined deficiencies of $22,994.97 for 1936 and $13,938.57 for 1937 in the income tax of Emile Pfizer, now deceased. He included in Pfizer's income interest and dividends received by him and transferred to his Nassau Corporation. Findings of Fact Emile Pfizer died a resident of Gladstone, New Jersey, on July 17, 1941. He filed his income tax returns for 1936 and 1937 on a cash basis in the Fifth District of New Jersey at Newark. November 8, 1935, the secretary of Coral Island Plantations, Limited, a Bahama "company," exhibited to its Board of Directors a letter dated October 31, 1935, addressed to the company before it was organized, by Emile Pfizer, offering to transfer to it the following securities: $5,000
German Government International 5 1/2 S
bonds due June 1, 1965,
1,000
shares Manhattan Railway Company
stock, $100 par,
200
shares Chemical Bank & Trust Company, $10 par,
1,000
shares Northwestern Yeast Company, $100
par,
3,000
shares Charles Pfizer & Company Pre-
ferred, $100 par,
1,000
shares Atlas Corporation, no par com-
mon,
400
shares The American Tobacco Company,
non-voting "B," $25 par,
100
shares The American Tobacco Company,
common, $25 par.
*82 * * * * *
Upon the condition that you issue and deliver to me $500,000. face value of your 2% 20 year Debenture bonds. * * * The bonds which are to be delivered to me are to be in the form already exhibited and approved by me. If you accept this offer, the delivery of bonds may be made to my agent, Albert R. Palmer of New York City, against his signature. The proposed form of the bonds was spread on the minutes and the following resolution adopted: RESOLVED, that it is advisable and for the best interests of this Company to acquire the securities enumerated in letter of Mr. Emile Pfizer of New York City presented to the Board this day, and it is therefore recommended to the members of the Company that appropriate action be taken looking toward the acquisition of said securities and the issuance of Five hundred thousand dollars ($500,000.) face value Debenture Bonds of this Company therefor. The minute book states this directors' meeting was held at 12:15 o'clock in the afternoon. The directors then adopted a resolution that a general meeting of the members of company be called for 12:30 the same afternoon. The minutes record that such general meeting was held at 12:30 o'clock *83 that afternoon, at which a resolution was adopted accepting the offer of Emile Pfizer and authorizing the proposed issue of debenture bonds, and designating the Corporation Surety Company in New York City as agent for the payment of interest on the debentures. It was further provided that all securities standing in the name of or owned by the company be transferred into the name of the Corporation Surety Company to be held by it in trust for Coral Island Plantations, Limited. The Acting Assistant Registrar General of the Bahama Islands on November 6, 1935 certified that: a Memorandum of Association of CORAL ISLAND PLANTATIONS. LIMITED, has this day been registered in my office under the provisions of the Companies Act Whereby the said Parties have become and are an incorporated Company under the name and style of CORAL ISLAND PLANTATIONS, LIMITED. The corporate minute book bears imprinted on the cover, and typed on the first page, the legend: Palmer & Serles Counsel New York This firm was Emile Pfizer's attorney when the company was organized and throughout its existence. The original subscribers to the Articles of Association of the company and the directors thereof were all *84 residents of Nassau, Bahama Islands, and subscribed their names thereto on November 5, 1935. All resigned as directors at the first meeting of the members held November 7, 1935, and the president, vice-president and secretary also tendered their resignations, which were accepted. At a directors' meeting held November 8, 1935, Albert R. Palmer was elected president of the company. November 26, 1935, a general meeting of the members was held in New York City from the minutes of which it appears that all of the original subscribers transferred their shares to residents of the United States. The 100 shares of authorized capital were then held on that date as follows: 88 shares
Albert R. Palmer
6 shares
Robert C. Palmer
2 shares
Frank R. Serles, Jr.
2 shares
Joseph A. Clossick
2 shares
Raymond J. Walsh
All these were elected as directors at said meeting, and under date of January 17, 1936, the Registrar, Nassau, Bahamas, was so notified. He was further advised that each was a lawyer by occupation, except Robert C. Palmer, who was a student at law. In the minutes of the meeting dated October 27, 1937, it appears that shares held in the names of Frank R. Serles, Jr., and *85 Joseph A. Clossick had been transferred to Anna M. Palmer, wife of Albert R. Palmer, and to Robert P. Serles, an employee of the Palmer law firm, and to Dorothy F. Serles, his wife, 98 of the 100 shares thus being held by Palmer, Serles and their respective wives. The Memorandum of Association of the company states it was established with a multiplicity of objects, among which were the acquiring of farms and ranches and raising of sugar cane and other vegetables thereon; the manufacture of sugar, molasses and syrups; raising, selling, canning and preserving of fruits and nuts; raising, buying, selling, exporting and importing of trees, shrubbery, plants, flowers and vines; breeding and dealing in poultry and livestock; operating greenhouses; purchasing, subscribing to and dealing in and underwriting stocks, bonds, and other securities, organizing of syndicates; carrying on a brokerage business; buying, selling and holding real estate and wines; and the borrowing of money. The company during its two years' existence issued and delivered to Emile Pfizer its $500,000 issue of debentures, paid the interest thereon, and received from him and deposited in its bank account interest and *86 dividends received by him on the securities he had offered to transfer to the company in exchange for its debentures. Such interest and dividends constituted the company's entire income. It had no salaried employees, had no assets other than the Pfizer securities, kept no books of account other than notations in its checkbook, and paid no dividends. According to its Articles of Association, the company - 2. In addition to the registered office within the Bahama Islands, * * * may have an office for the transaction of business at any other place, and in particular at the Borough of Gladstone, in the County of Somerset, State of New Jersey * * *. In 1936 and 1937, and at the time of his death in 1941, the place of residence of Emile Pfizer was Gladstone, New Jersey. No shareholder, officer or director of the company resided there. The securities offered by Pfizer in exchange for the debentures were in a safedeposit box in New York City and were never physically in the Bahama Islands. Pfizer never notified the distributing agents or the several corporations who paid dividends and interest on the securities that they had been transferred to the company, and all of them remained on *87 the records of the various corporations in the name of Pfizer, who received the dividend and interest payments. Dividends and interest received by Emile Pfizer on these securities in 1936 were $32,617.80 and in 1937 were $29,926.40, and these amounts were transferred to the company whenever they were received by him. Of these amounts, $200 each year consisted of interest on the German Government bonds, and the rest was from American industrials. No part of these receipts was included or reported in Pfizer's income tax returns for the years received. Coral Island Plantations, Limited, filed no income tax return at any time. Late in 1937 Pfizer's attorney, Albert R. Palmer, suggested that Robert P. Serles, an employee of Palmer's law firm, become a director of the company, and he was so elected for the purpose of conducting the Equidation of the company. He was formally appointed liquidator at a shareholders' meeting October 27, 1937. He retained as legal counsel to assist him the firm of Palmer & Serles of New York, and Godfrey W. Higgs of the Bahamas. When the company went into liquidation its sole assets consisted of the Pfizer securities and $18,575.91 cash remaining from the *88 dividends and interest transmitted to it by Pfizer. The only debts of the company were the debentures held by Pfizer and the interest accrued thereon. The formalities of liquidation were accomplished by the return of the securities and an undesignated amount of cash to Pfizer in cancellation of the debentures held by him. The liquidator's final report was dated December 27, 1937. It was approved and the liquidator discharged at a meeting of the shareholders on that date. The company's sole book of account, its checkbook, shows as its last entry a check for $17,160.71 drawn in favor of The Royal Bank of Canada, Nassau Branch, on February 11, 1938, after the liquidator was discharged. The liquidator's work sheets list this amount as "1/10/38 Balance on Hand." There is no evidence as to its disposition except that no shareholder received anything from the liquidation. Opinion STERNHAGEN, Judge: In his returns for 1936 and 1937, the taxpayer adopted the hypothesis that the Bahamas company, Coral Island Plantations, Limited, was a substantial entity; that he had transferred to it the securities listed in the findings in exchange for the company's debentures; that the interest and dividends *89 received by him on the listed securities and said to have been transferred by him directly to the company were not his income but the income of the company who was the owner of the securities. The Commissioner rejected the hypothesis, and determined that the dividends and interest on the securities was the taxpayer's income. We think the Commissioner's determination must be sustained. ; ; . The whole performance of organizing the company and purporting to exchange the securities for the debentures and then having the dividends and interest credited to the company was a palpable sham. It was organized solely to give an appearance of reality to Pfizer's offer of an exchange so that he would appear not to receive the income from the securities. It had no business to carry on and in fact did no business, even though its articles of association gave it wide and diversified powers. It was never the record owner of the securities, and from the income which Pfizer assigned to it (the evidence only shows five *90 checks of the Northwest Yeast Company each for $2,000, endorsed by Pfizer, Agent, to Coral Island Plantations) no distributions were ever made to shareholders although they were all nominally different from Pfizer. Coral Island Plantations never filed an income tax return in the United States. At the time of its liquidation less than two years after it was organized, it had $18,575.91 cash. Its pencil work sheets showed payments to the New York agent of $10,000 interest on debentures, to the attorneys for services and disbursements, and for stamp taxes in insignificant amounts. Believing as we do that no credence can be given to the existence of the Bahama Company, it is unnecessary to discuss the reliability of the evidence and exhibits of accounts and records. Decision will be entered for the respondent.